**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 28 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FEDERAL LANDS LEGAL
CONSORTIUM, on behalf of its
members; E.A. ROBART ESTATE;
ROSE COLEMAN; HERSCHEL
DOWNS; RAMONA DOWNS; R. R.
DRACHMAN; D. DRACHMAN; DAN
HEAP; GLEN MCCARTY; MARIAN C.
ROBART; WALTER L. WILTBANK;
EMER WILTBANK; ESTHER
WILTBANK; LAZY YJ RANCH; W.
QUINSLAR; B. QUINSLAR; FOST
FLAKE; GAYLAN FLAKE; MARLIN L.
MAXWELL; C. R. TRUELOCK;
WILLIAMS RANCH; GAYLORD
"BOB" YOST; LUCINDA YOST;
HAROLD B. LESUEUR; BUTLER
FARMS; ZENO KIEHNE; HUGH
MCKEEN; JOE MILLIGAN; LUCILLE
MILLIGAN LUMPKIN; FOWLER
CATTLE CO.,

      Plaintiffs - Appellants,

and

APACHE COUNTY, ARIZONA;
CATRON COUNTY, NEW MEXICO,

      Plaintiffs,

v.

UNITED STATES OF AMERICA; DAN
GLICKMAN, Secretary of the

No. 98-2211

United States Department of Agriculture; MICHAEL DOMBECK, Chief of the United States Forest Service; CHARLES CARTWRIGHT, Regional Forester, Southwestern Region; ABEL CAMARENA, Forest Supervisor for the Gila National Forest; JOHN BEDELL, Forest Supervisor for the Apache-Sitgreaves National Forest,

Defendants - Appellees,

NATIONAL WILDLIFE FEDERATION,

Amicus Curiae.

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO (D.C. No. 97-1126 HB/JG)**

Roger T. Williams (Karen Budd-Falen, Budd-Falen Law Offices, P.C., Cheyenne, Wyoming; Lee Peters, Hubert & Hernandez, Las Cruces, New Mexico, with him on the briefs), for Plaintiffs-Appellants.

Lisa E. Jones, United States Department of Justice, Washington, D.C. (Lois J. Schiffer, Assistant Attorney General, Environment & Natural Resource Division, Martin W. Matzen, Andrew A. Smith, John J. Kelly, United States Attorney, John Zavitz, Assistant United States Attorney, with her on the brief), for Defendants-Appellees.

James B. Dougherty, Washington, D.C., filed a brief for Amicus Curiae National Wildlife Federation.

Before **BALDOCK, HOLLOWAY** and **HENRY,** Circuit Judges.

**HOLLOWAY,** Circuit Judge.

_____

This appeal concerns the denial of the Federal Lands Legal Consortium's (FLLC) motion for a preliminary injunction to enjoin the modification of grazing permits by the United States Forest Service. See Unpublished Memorandum Opinion and Order, Addendum A to Appellants' Corrected Opening Br. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

**I**.

FLLC consists of individuals who hold livestock grazing allotments in the Gila National Forest in New Mexico and the Apache-Sitgreaves National Forest in Arizona. I App. 1. In early 1995, the United States Forest Service (Forest Service) initiated allotment-specific National Environmental Policy Act (NEPA), 43 U.S.C. § 4321 et seq., processes for reauthorization of grazing on FLLC members' allotments.[1] I App. at 5. The processes were completed for the Gila Forest allotments prior to the expiration of existing permits. Based upon the analysis of the processes, the Forest Service issued new permits to FLLC members but imposed restrictions that limited the amount of forage which cattle on the allotments in the Gila Forest could consume.

_____

[1] Pursuant to the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., the Forest Service must prepare a "detailed statement on the environmental impact" when it proposes major action. The detailed statement is referred to as an Environmental Impact Statement (EIS). The Forest Service may first prepare an Environmental Assessment (EA) to analyze whether an EIS is required. 40 C.F.R. §§ 1501.4; 1508.9(a).

3

The Forest Service did not complete the processes for the Apache-Sitgreaves

Forest prior to the expiration of grazing permits. Thus, new permits were issued to those

FLLC members with no new conditions or standards.[2] However, upon completion of the

processes, the Forest Service submitted three proposals for implementing needed

conditions for continued grazing on the Apache-Sitgreaves allotments. FLLC members

commented on the three proposals pursuant to 36 C.F.R. part 215 (1997). I App. at 16,

38. The Forest Service eventually selected the "Balance with Capacity" alternative,

reasoning that this proposal best protected species listed on the Endangered Species List.

I App. at 39; 166-67. Using the "Balance with Capacity" standard, the Forest Service

issued new permits to FLLC members holding allotments in the Apache-Sitgreaves

National Forest. As a result, alleges the FLLC, grazing rights were substantially

reduced,[3] II App. at 72, but the reductions occurred incrementally over a three-year

period. Each decision issuing the new permits was supported by a detailed site-specific

EA prepared pursuant to NEPA.

FLLC members administratively appealed the Forest Service decisions to modify

the permits pertaining to both the Gila and the Apache-Sitgreaves Forests pursuant to 36

---

[2] The permits were issued pursuant to § 504(b) of the Rescissions Act of 1995, Pub. L. No. 104-19, 109 Stat. 194, 212-13. The provision, entitled "Reissuance Pending NEPA Compliance," provides that permits that are issued prior to completion of NEPA analysis and decision may be modified or re-issued if necessary to conform to such NEPA analysis.

[3] While the permits did not reduce Animal Unit Months, they imposed utilization standards that limited the amount of forage cattle could consume in the Apache-Sitgreaves Forest. I App. at 114.

C.F.R. part 251. I Supp. App. at 116. The members requested a trial-type adjudicatory hearing before an independent Administrative Law Judge, I App. at 317A, a request the Forest Service denied. I App. at 6. Upon denial, the FLLC permit holders availed themselves of the two levels of mandatory appeals as provided for in 36 C.F.R. 251.87. At the first level of appeal, which is before a Reviewing Officer, permit holders are allowed to make informal presentations as a matter of right. 36 C.F.R. 251.90(c), 36 C.F.R. 251.97(b). FLLC members made such oral presentations before the Forest Service Reviewing Officer. II Supp. App. at 320.

The Forest Service's Reviewing Officer denied all of the members' appeals. II Supp. App. at 299-318. FLLC members utilized the second level of appeal before the Regional Forester. The Regional Forester, in a written, detailed response, upheld the Reviewing Officer's decisions. II Supp. App. at 319-35. FLLC members requested a discretionary review of the Regional Forester's decision, which was denied.

In August 1997, FLLC filed the instant suit in the United States District Court for New Mexico alleging violations of procedural due process as secured by the Fifth Amendment to the United States Constitution, inter alia. I App. at 1, 21.[4] In March 1998, FLLC filed a motion in that suit for a preliminary injunction to enjoin the Forest Service from modifying the pre-1996 grazing permits FLLC members held. I Supp. App. at 111.

---

[4] FLLC's complaint alleged six claims for relief, see I App. at 21-31, but only the denial of the due process claim is on appeal.

The district court denied the motion for a preliminary injunction. Memorandum Opinion and Order 2, 12.

The judge reasoned that FLLC could not show a substantial likelihood of success on the merits because the procedures afforded to FLLC members by the Forest Service were sufficient to satisfy procedural due process. Id. at 7, 9. The judge noted that FLLC members are entitled to written notice of appealable decisions, the right to appeal the decision to a Reviewing Officer, a required response to the notice of appeal, and the right to ask for informal oral presentations before the Reviewing Officer. Together, this "extensive appeals process satisfied all due process requirements." The district judge further found that FLLC had established irreparable harm if the preliminary injunction were denied, but held that the balancing of harms favored the Forest Service due to the potential injury to the environment and endangered species and, thus, the public interest outweighed the hardships from denial of the injunction. Id. at 11-12. This timely appeal followed.[5]

## II.

### A.

---

[5] In addition to the briefs of the parties, the National Wildlife Federation filed a brief as Amicus Curiae. The brief addresses the legislative listing of the Endangered Species Act; the rate at which species are disappearing; and the adverse impact of the destruction of habitat. The amicus urges the court to enforce the Act "with the vigor that is called for by the letter and spirit of the law." Brief for Amicus Curiae National Wildlife Federation at 17.

We review the denial of a motion for a preliminary injunction for abuse of discretion. See Chemical Weapons Working Group, Inc. v. United States Dep't of the Army, 111 F.3d 1485, 1489 (10th Cir. 1997). To obtain a preliminary injunction, the party requesting such an extraordinary equitable remedy bears the burden of showing: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. See id.

This court has adopted a modified requirement as to the likelihood of success, as the district judge correctly noted. If the movant has established the other three requirements for a preliminary injunction (requirements (2), (3), and (4) above), the movant may satisfy requirement (1) by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation. See Walmer v. United States Dep't of Defense, 52 F.3d 851, 854 (10th Cir. 1995).

**B.**

FLLC's motion for a preliminary injunction was based on FLLC's claim of deprivations of procedural due process when the Forest Service altered their members' grazing permits. We analyze below the two general actions on the permits: changes in the terms and conditions of permits during the permit renewal process for the Gila Forest, and

7

changes made after the issuance of new permits for the Apache-Sitgreaves Forest.

The Fifth Amendment protects individuals from deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. V. The Amendment therefore requires an individual to prove that he or she was deprived of a protected interest and that the deprivation occurred without the "appropriate" level of process. See Greene v. Barrett, 174 F.3d 1136, 1140 (10th Cir. 1999). Here, the district court assumed that FLLC's members had a protected property interest in the terms and conditions of their grazing permits, but held that the Forest Service provided FLLC's members with all of the process that they were due. This sequence of analysis has been followed in several instances by this court and others in considering claims of denial of procedural due process. See Hoyl v. Babbitt, 129 F.3d 1377, 1386 (10th Cir. 1997) ("We need not decide, however, whether Plaintiff had a protected property interest in a § 39 suspension, because even assuming Plaintiff had a right to due process regarding the suspension, the process afforded by the IBLA and later by the district court satisfies any such right."); Derstein v. Kansas, 915 F.2d 1410, 1413 (10th Cir. 1990) (same); Landmark Land Co. of Oklahoma v. Buchanan, 874 F.2d 717, 723 (10th Cir. 1989) (same); Meder v. City of Oklahoma City, 869 F.2d 553, 554 (10th Cir. 1989) (same); Seibert v. University of Oklahoma Health Science Center, 867 F.2d 591, 599 (10th Cir. 1989) (same); Rosewitz v. Latting, 689 F.2d 175, 177 (10th Cir. 1982) (same); see also Clouser v. Espy, 42 F.3d 1522, 1540 (9th Cir. 1994) (same).

8

The Supreme Court, however, has recently clarified how courts should analyze such claims:

> The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty." Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.

American Mfg. Mut. Ins. Co. v. Sullivan, __ U.S. __ (1999); 119 S. Ct. 977, 989 (citations omitted) (emphasis added). Without citing American Mfg., we followed this method of analysis in our most recent procedural due process case. See Greene, 174 F.3d at 1140 ("First, we determine whether the individual had a protected interest under the Due Process Clause .. . . If so, we examine whether he or she received an appropriate level of process"). As we are instructed by American Mfg., we no longer merely assume that an individual has a protected property interest but, instead, determine whether such an interest exists as a threshold matter.[6] We therefore address FLLC's claim that their members possess protected property interests in the terms and conditions of their grazing permits. See I App. at 21 ("The Plaintiffs' . . . entitlement to renew their permits under

---

[6] Two district courts have applied the holding from American Mfg. See Diaz-Zaldierna v. Fasano, 43 F. Supp. 2d 1214, 1221 (S.D. Cal. 1999) ("Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." [American Mfg.] Since here, as in [American Mfg.], there has been no deprivation of a constitutionally protected interest, we need go no further.") (internal quotation marks omitted); Bass v. Butler, 1999 WL 391483, *2 (E.D. Pa. May 3, 1999) ("Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.") (quoting American Mfg., 119 S. Ct. at 989) (internal quotation marks omitted).

previously existing terms and conditions constitute 'property interests' protected by the Due Process Clause of the Fifth Amendment to the United States Constitution.").

## C.

In considering Fourteenth Amendment procedural due process claims, courts have noted that property interests are "not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) (citations and internal quotation marks omitted); see also Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (stating the same proposition). "State law can create a property interest in a number of different ways," including explicitly creating such a right. See Movers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 719 (8th Cir. 1995); see also Perry v. Sindermann, 408 U.S. 593, 601 (1972) ("We have made clear . . . that 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by existing rules or understandings.") (citation and internal quotation marks omitted). Regardless of its source, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577 (emphasis added). These pronouncements concerned Fourteenth Amendment issues and they therefore spoke of rights created by state law.

10

Here, however, we deal with claims of Fifth Amendment due process violations and therefore consider whether federal law has created such a property interest. Federal law has not explicitly created any "property" interest in a grazing permit or its terms and conditions. To the contrary, federal pronouncements have stated that such permits do not convey "any right, title, interest, or estate in any public lands or resources." 16 U.S.C. § 580l; 43 U.S.C. § 1752(h); 36 C.F.R. § 222.3(b). A grazing permit therefore gives the permitee merely a license to use federal land, not a vested right in that land. See Diamond Bar Cattle Co. v. United States, 168 F.3d 1209, 1217 (10th Cir. 1999) ("This license was revocable at the government's pleasure and conferred no right in [the permittees] or their predecessors to graze a specific allotment of land.").

Because grazing permits confer not a "right," but merely a "privilege," courts have held that such permits (and thereby their terms and conditions) do not constitute "property" for the purposes of the Fifth Amendment's Takings Clause. See United States v. Fuller, 409 U.S. 488, 494 (1973) ("The provisions of the Taylor Grazing Act quoted supra make clear the congressional intent that no compensable property right be created in the permit lands themselves as a result of the issuance of the permit."); United States v. Cox, 190 F.2d 293, 296 (10th Cir. 1951) ("Although the permits are valuable to the ranchers, they are not an interest protected by the Fifth Amendment against the taking by the Government who granted them with the understanding that they could be withdrawn at any time without the payment of compensation."); see also Acton v. United States, 401

11

F.2d 896, 899 (9th Cir. 1968) ("It is clear that a license does not constitute property for which the Government is liable. . . ."). The Forest Service suggests that "property" should have the same meaning in the context of the Fifth Amendment's Due Process Clause. See, e.g., Appellees' Response Br. at 25-26. According to the Forest Service, FLLC's members therefore cannot have a property interest in their grazing permits, much less the permits' terms and conditions. See, e.g., id.; Bischoff v. Glickman, __ F. Supp. 2d ___ (D. Wyo. April 13, 1999); 1999 WL 476771, *6 (adopting the Forest Service's approach).

Contrary to the Forest Service's suggestion, the Supreme Court has abolished the rights/privileges distinction under the Due Process Clause: "[T]he Court has fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights." Roth, 408 U.S. at 571. Under the Due Process Clause, the fact that a permit confers only a license "is but one factor to be considered" when determining whether an individual has a protected property interest. Coomes v. Adkinson, 414 F. Supp. 975, 993 (D.S.D. 1976). As the Seventh Circuit explained:

> [W]hen . . . juxtaposed with the statement in section 1 of the Illinois Liquor Control Act that a liquor license "shall be purely a personal privilege and shall not constitute property," the conclusion may seem inescapable that these plaintiffs had no Fourteenth Amendment property right in their liquor license. But it is not, even if one takes literally the proposition that property, unlike life and liberty, comes from the government.
>
> "Property" in the Illinois Control Act need not mean the same thing

12

> as "property" in the due process clause. . . .
>
> So we must look behind labels, and decide whether the plaintiffs' license was "property" in a functional sense.

Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir. 1983) (citations and alterations omitted). Therefore, the fact that a grazing permit is not "property" under the Takings Clause does not prevent the same permit (or its terms and conditions) from constituting "property" under the Fifth Amendment Due Process Clause. See, e.g., Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991) ( "For the appellees to recover for the alleged procedural due process violations the City must have infringed a property interest encompassed by the Fourteenth Amendment. For these purposes, however, property interests are defined somewhat differently than they are for taking purposes . . . .") (footnote omitted).

Where, as here, the federal government has not explicitly created a property right in a permit, we ordinarily look to the degree to which the federal government has restrained its own discretion relating to that permit. See Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1116 (10th Cir. 1991) ("When analyzing whether a plaintiff presents a legitimate claim of entitlement, we focus on the degree of discretion given the decisionmaker . . . ."); see also Norton v. Village of Corrales, 103 F.3d 928, 931 (10th Cir. 1996) ("In the entitlement analysis nearly all courts focus on whether there is discretion in the defendants to deny a zoning or other application."); Movers Warehouse, 71 F.3d at 719 ("A state may also create a constitutionally protected interest by

13

establishing statutory or regulatory measures that impose substantive limitations on the exercise of official discretion.") (citation and internal quotation marks omitted). If a benefit is a "matter of statutory entitlement for persons qualified to receive them," then the government has created a property interest in that benefit. Goldberg v. Kelly, 397 U.S. 254, 262 (1970).

As indicated above, FLLC asserts two distinct deprivations of their members' rights: (1) the Forest Service changed the terms and conditions of the permits to use Gila Forest during the permit renewal process, and (2) the Forest Service changed the terms and conditions of the permits to use Apache-Sitgreaves Forest after it had issued new permits to FLLC's members. We address each type of permit decision in turn.[7]

**1.**

FLLC argues that the federal government has limited the Forest Service's discretion to change the terms or conditions from previous Gila Forest permits during the permit-renewal process. See Appellants' Reply Br. at 3-15. FLLC bases their argument, in part, on the fact that they have a priority for renewal. See Appellants' Reply Br. at 12-

---

[7] We note that we do not decide whether FLLC's members have property interests in the permits themselves. Compare Bischoff, __ F. Supp. 2d at __; 1999 WL 476771, at *6 (holding that a permitee does not have a property interest in a grazing permit) with Coomes, 414 F. Supp. at 994-95 (holding that a permitee does have a property interest in a grazing permit) with Shufflebarger v. Commissioner, 24 T.C. 980, 991 (1955) (treating a grazing permit as property for tax purposes) and In re Dunning, 77 B.R. 789, 791 (Bankr. D. Mont. 1987) (valuing a grazing permit as property as part of a plan confirmation under the Bankruptcy Code). The Forest Service did not deprive FLLC's members of their right to the permits, but merely to the terms and conditions that had been included in past permits.

14

13; 43 U.S.C. § 1752(c) (providing for priority rights); 36 C.F.R. § 222.3(c)(1)(ii) (same). Although FLLC may have a priority during renewal, this court has repeatedly held that the decision whether to issue or deny a permit is a discretionary one: "[T]he very determinations of whether to renew grazing permits and whether public lands should even be designated for grazing purposes[, see 36 C.F.R. § 219.20,] are matters completely within the Secretary of Interior's discretion." Baca v. King, 92 F.3d 1031, 1037 (10th Cir. 1996); see also United States v. Morrell, 331 F.2d 498, 501 (10th Cir. 1964) ("We have held that the grant or denial of a permit is a discretionary function. . . ."); Chorunos v. United States, 193 F.2d 321, 323-24 (10th Cir. 1952) ("It seems clear to us that the granting or rejection of the applications here was within the discretionary function of the range officials. . . .").

More importantly, during the permit renewal process, an applicant has a priority for a permit only "[s]o long as . . . the permitee . . . accepts the terms or conditions to be included by the Secretary. . ." 43 U.S.C. § 1752(c)(3); see also 16 U.S.C. § 580l ("The Secretary of Agriculture in regulating grazing on the national forest . . . is authorized, upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock. . . ."). The Forest Service, in turn, has discretion to require any change it deems necessary, see 16 U.S.C. § 580l; 43 U.S.C. § 1752(e); 36 C.F.R.§ 222.3 (c)(1)(vi), including discretion to set the "numbers of animals to be grazed and the seasons of use," 43 U.S.C. § 1752(e); 36 C.F.R. § 222.3(c)(1)(i), which are, in essence, the permit changes

15

at issue in this action.[8]   In the circumstances, even if FLLC's priority in some way restrains the Forest Service's discretion to issue or deny a permit, it does not restrain the Forest Service's discretion to set the terms or conditions of the permit.[9]   Thus, FLLC would not appear to have a legitimate claim of entitlement to the terms and conditions of their previous permits.[10]

FLLC suggests "objective administrative and judicial review" restrain the Forest Service's exercise of this discretion.  Appellants' Reply Br. at 12.  It is well-settled, however, that "[p]roperty cannot be defined by the procedures provided for its

---

[8]   The Forest Service did not directly alter the number of animals that FLLC's members could graze or the seasons that they could use the Gila Forest.  Instead, the Forest Service made those changes indirectly by limiting the amount of forage cattle could consume. See I App. at 114.

[9]   FLLC devotes much of its reply brief to discussing the federal government's approach to grazing before it adopted the permit requirement in the Taylor Act and applied that requirement in later acts.  We rely, instead, on the current statutes and regulations. See Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169, 1179 n.8 (9th Cir. 1999) ("[W]e are bound by what Congress actually enacted."), petition for cert. filed, 68 U.S.L.W. 3129 (U.S. Aug. 10, 1999); see also United States v. Romero, 122 F.3d 1334, 1337 (10th Cir. 1997) ("In interpreting a statute, we begin with the plain language of the statute itself.  If the terms of the statute are unambiguous, our inquiry ends.") (citation omitted);  Bank One Chicago v. Midwest Bank & Trust Co., 516 U.S. 264, 279 (1996) (Scalia, J., concurring) ("The law is what the law says, and we should content ourselves with reading it rather than psychoanalyzing those who enacted it.").

[10]   FLLC argues that the Forest Service lacks discretion to alter the terms and conditions of the permits because it uses scientific criteria, rather than its judgment, to make those determinations.  See Appellants' Reply Br. at 13-14.  FLLC, however, has not suggested that the Forest Service must use those scientific criteria.  That being so, the choice to use scientific criteria is itself a discretionary decision.  Moreover, the application of the scientific criteria to a particular permitting decision is also discretionary.  See, e.g., I App. at 209-11.  In the circumstances, FLLC's argument is not well-taken.

16

deprivation." Loudermill, 470 U.S. 532 (1985) (internal quotation marks omitted); see also Bunger v. University of Oklahoma Bd. of Regents, 95 F.3d 987, 991 (10th Cir. 1996) ("The university's promise that it would follow certain procedural steps in considering the professors' reappointment did not beget a property interest in reappointment."); Bituminous Materials, Inc. v. Rice County, 126 F.3d 1068, 1070 (8th Cir. 1997) ("Procedures alone do not create a substantive property right.") (citation, alteration, and internal quotation marks omitted). In the circumstances, the Forest Service's choice to provide procedural protections is insufficient, by itself, to create a property right.

FLLC next argues that, historically, the Forest Service has renewed the permits without any changes in the permits' terms or conditions. See Appellants' Reply Br. at 15; see also Shufflebarger v. Commissioner, 24 T.C. 980, 991-92, 997 (1955) (noting the historical practices of the Forest Service). According to FLLC, the Forest Service's practice thereby creates a legitimate entitlement to the terms and conditions of the previous permits. See Appellants' Reply Br. at 15; see also Perry, 408 U.S. at 602-03 (holding that a mutually implicit understanding may create a property right).

As an initial matter, it is not apparent that those historical practices survived the enactment of the Federal Land Policy and Management Act in 1976. Under that Act, "future adjudications of grazing use would be based on criteria vastly different than those provided" under the prior acts. Public Lands Council v. Babbitt, 167 F.3d 1287, 1295 (10th Cir. 1999) (citation and internal quotation marks omitted), cert granted, __ S. Ct. __

17

(U.S. Oct. 12, 1999); 1999 WL 412636; see also David Abelson, Water Rights and Grazing Permits: Transforming Public Lands into Private Lands, 65 U. Colo. L. Rev. 407, 414-15 (1994) (The Federal Land Policy Management Act "did not repeal the Taylor Act, but rather superimposed a new management system with more diverse goals and emphases."); Bruce M. Pendery, Reforming Livestock Grazing on the Public Domain: Ecosystem Management-Based Standards & Guidelines Blaze a New Path for Range Management, 27 Envtl. L. 513, 556 (1997) ("[W]hen FLPMA was enacted in 1976, sweeping revisions of the regulations were made.") (citation and internal quotation marks omitted).  This court has therefore concluded that "[a]lthough it may well be the case that there were long periods in which the Secretary did not exercise his authority to change the permitted number . . . in new permits, this practice did not rise to the level of regulatory mandate."  Public Lands Council, 167 F.3d at 1297-98 (footnote omitted).

Regardless, "in the absence of a statutory or contractual right to renewal, a person . . . can claim no property interest in the indefinite renewal of his or her contract."  Durant v. Independent Sch. Dist. No. 16, 990 F.2d 560, 563 (10th Cir. 1993) (citation and internal quotation marks omitted); see also Brown v. Independent Sch. Dist. No. I-06, 974 F.2d 1237, 1239 (10th Cir. 1992) (stating the same principle), Martin v. Unified Sch. Dist. No. 434, 728 F.2d 453, 454-55 (10th Cir. 1984) (holding that a teacher whose one-year contract had been renewed every year for ten years did not have a protected property interest in renewal during the eleventh year).  Courts have adopted this rule, because "[a]

18

constitutional entitlement cannot be created -- as if by estoppel -- merely because a wholly and <u>expressly</u> discretionary state privilege has been granted generously in the past." <u>Connecticut Board of Pardons v. Dumschat</u>, 452 U.S. 458, 465 (1981) (emphasis in original); <u>see also</u> <u>Cassidy v. Hawaii</u>, 915 F.2d 528, 531 (9th Cir. 1990) (stating the same principle).

As noted above, the statutory scheme gives the Forest Service discretion to change the terms and conditions during the permit renewal process. That the Forest Service customarily did not exercise that discretion creates, at best, a unilateral expectation that the Forest Service would continue that practice. That expectation is insufficient to establish a property right. <u>See</u> <u>Roth</u>, 408 U.S. at 577 ("To have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it."); <u>see also</u> <u>Cassidy</u>, 915 F.2d at 531 ("Not all customs create a property right, however. . . . The state expressly disavowed any intention to create such a right to renewal and Cassidy has shown no more than a unilateral expectation of renewal."); <u>cf.</u> <u>Perry</u>, 408 U.S. at 602 n.7 ("If it is the law of Texas that a teacher in the respondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated.").

Taken togther, FLLC has not demonstrated that their members have a property interest in the terms and conditions of the previous permits for Gila Forest.

**2.**

FLLC also argues that federal law has limited the Forest Service's discretion to

19

change the terms or conditions after the issuance of new permits for the Apache-Sitgreaves Forest. In some circumstances, once a permit is issued, the holder may have a property right in the permit and its terms. See, e.g., Bell v. Burson, 402 U.S. 535, 539 (1971) ("Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. . . . In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."); New York State Trawlers Ass'n v. Jorling, 16 F.3d 1303, 1311 (2d Cir. 1994) ("One's interest in a license may be a property interest cognizable by the Due Process Clause of the Constitution. . . ."). Here, however, the Forest Service issued the permits for Apache-Sitgreaves Forest pursuant to an express Congressional authorization with restrictions:

> Notwithstanding any other law, term grazing permits which expire or are waived before the NEPA analysis and decision pursuant to the schedule developed by individual Forest Service System units, shall be issued on the same terms and conditions and for the full term of the expired or waived permit. Upon completion of the scheduled NEPA analysis and decision for the allotment, the terms and conditions of existing grazing permits may be modified or re-issued, if necessary to conform to such NEPA analysis.

Pub. L. No. 140-19, 109 Stat. 194, 212-213 (1995) (emphasis added).

The Forest Service issued FLLC members their permits pertaining to the Apache-Sitgreaves Forest pursuant to this Congressional authorization because it had not completed the NEPA analysis for the Apache-Sitgreaves Forest. Because Congress expressly allowed the Forest Service to alter the terms and conditions of the permits after the completion of the NEPA analysis, FLLC cannot successfully premise a legitimate

20

claim of entitlement to the terms and conditions of the permits as issued. Roth, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.") (emphasis added). Therefore, FLLC has not shown a property interest in the terms and conditions of the permits for the Apache-Sitgreaves Forest as issued.

## III.

Having concluded that FLLC has failed to demonstrate a property interest in the terms and conditions of their members' permits covering either the Gila or Apache-Sitgreaves Forests, we need go no further in this appeal. See American Mfg., 119 S. Ct. at 990. The district judge did not abuse his discretion in denying the motion for a

preliminary injunction. Accordingly his order is **AFFIRMED** and the case is **REMANDED** for further proceedings.