**State of OKLAHOMA, ex rel. OKLA-HOMA TAX COMMISSION, a state agency, Plaintiff,**

v.

**INTERNATIONAL REGISTRATION PLAN, INC., Defendant.**

No. CIV–02–1798–HE.

United States District Court, W.D. Oklahoma.

April 29, 2003.

Joe M Hampton, Patrick M Ryan, Phillip G Whaley, Amy J Pierce, Jason A Ryan, Ryan Whaley Hampton & Bomhoff, Oklahoma City, for Oklahoma Tax Commission, State of Oklahoma ex rel a state agency, plaintiff.

Jon Epstein, Robert D Nelon, Hall Estill–OKC, Oklahoma City, for International Registration Plan Inc, defendant.

### ORDER

HEATON, District Judge.

The State of Oklahoma, through the Oklahoma Tax Commission, filed this case seeking a declaration that certain sanctions imposed on Oklahoma by the defendant, the International Registration Plan, Inc., were improperly imposed. Oklahoma also requests a preliminary injunction preventing enforcement of the sanctions pending a final determination by the Court. A hearing was held on March 14, 2003, and, for the reasons that follow, the Court now concludes a preliminary injunction should be issued.

### BACKGROUND

The 48 contiguous states, the District of Columbia and several Canadian provinces participate in the International Registration Plan ("Plan" or "IRP"),[1] a registration reciprocity agreement administered by the defendant through its Board of Directors. The Plan permits commercial vehicle owners engaged in interstate commerce to register their truck fleets in one base jurisdiction.[2] The registration state then allocates the licensing or registration fees to the other states in which the vehicle travels, based on the percentage of miles logged in those jurisdictions. Oklahoma Tax Commission ("OTC") regulations previously permitted a fleet owner to establish a place of business in Oklahoma for registration purposes through a third-party service provider. This interpretation of the Plan was challenged by another state in 1999 and the issue was resolved by the Dispute Resolution Committee ("DRC"), a committee designated by the IRP's Board of Directors to construe the Plan.[3] The DRC concluded the Plan requires a registrant to have a more significant physical presence in a jurisdiction to establish a place of business there, than what is provided by a third-party service provider. The State of Illinois then filed a "Class 1" dispute against Oklahoma,[4] claiming its registration regulations and its use of estimated,

1. The plaintiff included the Plan in its Appendix ("App."). The Court will refer to the plaintiff's documents by the tab number.

2. The Plan received Congressional approval when Congress adopted the Intermodal Surface Transportation Efficiency Act of 1991, 49 U.S.C. §§ 31701–31708, which prohibits any state from imposing a commercial motor vehicle registration law or regulation that limits the operation of a motor vehicle registered under the Plan.

3. The Committee was designated by a Charter, which specifies its purpose and authority, membership, procedures, resolution criteria and actions. App. 3.

4. Article XXIII of the Plan provides for the resolution of disputes arising under it. A Class 1 dispute is defined as:

> A member jurisdiction's noncompliance with the Plan which results in a monetary loss: Disputes between jurisdictions or registrants in which a jurisdiction or a regis-

rather than actual, miles for new registrants deprived it and other member jurisdictions of fees they otherwise would have received. The DRC considered but did not resolve the claim at its November 2000 meeting.

In July, 2001, Oklahoma's records were inspected by a peer review team. The following August, the IRP Board examined the team's results and found Oklahoma to be in violation of the Plan, specifically §§ 210, 218, 800 and 906.[5] It directed the State to file evidence of compliance within sixty days and the DRC to review that evidence at its November 1, 2001, meeting. Oklahoma was informed that its failure to comply would automatically result in the sanctions provided in § 2304(a)(2)[6] and (4)[7] of the Plan.

In the interim, the State of Illinois refiled its Class 1 dispute with the IRP (the "Illinois Claim"), claiming the OTC's interpretation of "established place of business" and lenient enforcement of a Plan provision permitting the apportionment of fees in certain circumstances on the basis of estimated, rather than actual, miles traveled, violated Plan §§ 218 and 800. Illinois claimed Oklahoma had collected and retained a sum in excess of $15 million in apportioned fees for the years 1999–2001 that should have been remitted to it. Consideration of the Illinois Claim was deferred by the DRC, as requested by the parties, to the DRC's April, 2002, meeting.

At the November, 2001, meeting Oklahoma was again found to be out of compliance with Plan § 218, but the OTC announced that it was initiating rule-making procedures to amend its regulations to comply with that Plan provision. In late November, the IRP Board directed Oklahoma to implement new rules pertaining to the Plan's "established place of business" requirement by Feb. 15, 2002, or, in accordance with the Board's sanction authority in § 2304(a)(4), all member jurisdictions would be required to suspend immediately their distribution to Oklahoma of fees payable under the Plan.[8] As Oklahoma did adopt a new rule, the sanctions did not go into effect.[9]

The DRC heard the Illinois dispute on April 16, 2002,[10] and found that Okla-

trant suffers a monetary loss as the result of a member jurisdiction's asserted noncompliance with the Plan.
Plan, § 2300. Under the terms of the Plan, a Class 1 dispute is to be submitted to the IRP Board, which then delegates its resolution to the DRC.

5. In May, 2001, the IRP Board had declared Oklahoma to be provisionally out of compliance with Sections 218 and 800 of the Plan and ordered a peer review team to conduct a review. The Court has relied on the defendants' factual recitation for some of the background information, as neither party documented the events prior to August 2001.

6. Section 2304(a)(2) provides for the suspension of "any and all rights and privileges granted under the Plan to include but not limited to all voting rights, participation on the Board, submission of issues to the Board, input at meetings or working groups, participation in the peer review process."

7. Section 2304(a)(4) permits the Board to "order all member jurisdictions to suspend distribution of fees payable under the Plan to the jurisdiction subject to the order."

8. Oklahoma's rights and privileges under the Plan were immediately suspended by the IRP Board under § 2304(a)(2).

9. The Rule was adopted on January 29, 2002, but because it was challenged by several registration agents in Oklahoma state Court, it was not implemented by the OTC until April 12, 2002. As the IRP Board had postponed the effective date of the sanction because of the litigation until April 15, 2002, it was never imposed.

10. The scheduled hearing prompted the OTC to sue the IRP, claiming it failed to promulgate any procedural rules governing the hearing to ensure Oklahoma's right to fundamental fairness. The State sought a declaration

homa's noncompliance with § 800[11] had caused Illinois to suffer monetary losses. As the amount of the loss was still disputed, the DRC then ordered the two states to "find an agreeable level of loss and the terms under which both sides will settle" and directed that "[i]f the jurisdictions are unable to reach an agreement, a review of new accounts from 1999 to the present must be done. If the jurisdictions cannot agree on how the review will be done, an independent company will review 100% of the accounts, with the cost shared by Oklahoma and Illinois." Defendant's Exhibit H.

The following November, Oklahoma and Illinois reported to the DRC that they were unable to reach a settlement. When the State of Illinois' representative proposed that the two jurisdictions' experts work together to determine a loss amount, counsel for the State of Oklahoma recommended using joint audits to resolve the issue, as Oklahoma law prohibits settlements in excess of $250,000.00 without legislative approval. The DRC then asked if the parties would agree to a review of the joint audits by an independent party. When Illinois agreed but Oklahoma did not, the DRC ordered all member jurisdictions, beginning January 1, 2003,[12] to withhold funds from Oklahoma until it presented an acceptable plan to compensate Illinois for its losses ("Illinois Sanction").[13]

At the same November, 2002, meeting the DRC also determined Oklahoma was still out of compliance with Plan §§ 800 and 906 and, consequently, on December 13, 2002, imposed the Peer Review Sanctions. The member jurisdictions were directed to withhold funds from Oklahoma, effective February 7, 2003, if the State did not, before that date, evidence its compliance with the Plan requirement that an estimated distance chart be based on actual distance and its requirements under § 906 for the basing of owner-operators.

The OTC then filed this lawsuit, seeking a declaration that the sanctions imposed upon the State of Oklahoma by the DRC and ratified by the IRP Board, both the Peer Review and Illinois decisions, are invalid and unenforceable. The Peer Review sanctions are no longer an issue as they were lifted by the DRC on April 10, 2003, and plaintiff's motion for preliminary injunction, insofar as it involves the Peer Review sanctions, is STRICKEN as MOOT. Oklahoma had prepared a new estimated distance chart, which the DRC accepted as being in compliance with § 800 of the Plan and, at its April 10, 2003, meeting, the DRC approved Oklahoma's new owner-operator registration rules.

## DISCUSSION

A district court may issue a preliminary injunction if the moving party shows: "'(1) a substantial likelihood of prevailing

"that the current IRP rules are insufficient to afford the State of Oklahoma fundamental fairness with respect to IRP's hearing on the $15,000,000 Illinois Claim," Complaint, p. 8, and also injunctive relief; its request for a temporary restraining order and preliminary injunction was denied and the parties stipulated to the dismissal of the action.

11. The DRC found Oklahoma, by "allowing service companies to use estimated distance charts that were skewed toward high distance in low fee jurisdictions," defendant's Exhibit H, was out of compliance with the Plan.

12. The DRC had set December 1, 2002, as the effective date of the suspension of fee transmittals. The IRP Board of Directors, in response to Oklahoma's request for it to review the DRC's decision, ratified it, but delayed the date the fund withholding was to commence to January 1, 2003.

13. Oklahoma was, however, to continue sending its monthly transmittals of funds to the other jurisdictions as required by the Plan.

on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the public interest.'" *Greater Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1255 (10th Cir.2003) (quoting *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States,* 195 F.3d 1190, 1194 (10th Cir. 1999)). "'If the plaintiff can establish that the latter three requirements tip strongly in his favor, the test is modified, and the plaintiff may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Id.* at 1255–56 (quoting *Davis v. Mineta,* 302 F.3d 1104, 1111 (10th Cir. 2002)).[14] Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. *Id.* at 1256.

Initially, the Court must determine whether there is a substantial likelihood that the State of Oklahoma will ultimately succeed in establishing that the Illinois Sanction[15] was invalid. The plaintiff contends the Illinois Sanction violates the Plan, the DRC Charter and the defendant's rules, and claims the defendant's procedures do not afford its member jurisdictions constitutionally guaranteed fundamental fairness. The Court previously rejected Oklahoma's challenge to the Plan's dispute resolution process, *see State of Oklahoma ex rel. Oklahoma Tax Commission v. International Registration Plan, Inc.,* CIV–02–466–HE (W.D. Okla. April 12, 2002) (order denying temporary restraining order and preliminary injunction), and the State has again failed to demonstrate a likelihood of prevailing on its claim that the proceeding before the DRC on the Illinois–Oklahoma controversy was fundamentally unfair.[16] Oklahoma was given notice and permitted to submit evidence and present witnesses at the hearing.

While not disputing the DRC and Board's authority to decide Class 1 disputes, Oklahoma contends the DRC, when considering the Illinois–Oklahoma dispute and issuing its decision and sanction, violated its Charter by failing to apply mandated criteria and file a report containing required information.[17] Charter, App.3,

---

**14.** The modified test does not apply as the Court does not find that the other three requirements tip strongly in the State's favor. See infra text pp. 10–13.

**15.** Reference to the "Illinois Sanction" is to both the decision to sanction Oklahoma and the sanction imposed.

**16.** No controlling authority specifying the procedural protections the IRP is compelled to provide was cited.

**17.** The DRC Charter provides that "[w]hen reviewing issues submitted to the Committee pursuant to Article XXIII, Section 2304 [Dispute Resolution] the Committee shall consider the issue and proposed action in the light of, among others, the following criteria:

A. Consistency of the proposed action with other provisions of the Plan and the intent of the Plan;
B. Positive or adverse effects upon member jurisdictions and registrants;
C. The desirability of taking action leading to a Plan provision interpretation pursuant to Article XXI or of taking action leading to a Plan provision amendment pursuant to Article XXII; and
D. Both public and private costs, if known, of any proposed action, including administrative costs.

Plaintiff's App. 3, § VII, p. 4. The State contends the action taken by the DRC is inconsistent with the Plan's provisions and intent, adversely affects it, will result in substantial public and private costs, and constitutes an impermissible interpretation or amendment of the Plan."

§ VII, p. 4, § VIII, pp. 4–5. In the present posture of the case, the Court is not persuaded that the DRC applied improper criteria or that its alleged failure to properly document its actions matters. The Court concludes, however, that another Plan violation—the failure to determine the amount owed and issue an appropriate payment order—does warrant relief and the issuance of a temporary injunction.[18]

The Plan authorizes the Board to grant relief to a Class 1 claimant by ordering the noncomplying jurisdiction "to refund, credit, or transmit fees, at the current interest rate as the Board may decide." Plan, App. 2, Article XXIII, § 2304(a). If that jurisdiction fails or refuses within forty-five days to abide by the payment order then the Board may, among other possible actions, "order all member jurisdictions to suspend distribution of fees payable under the Plan to the jurisdiction subject to the order." *Id.* The IRP argues that the lack of a payment order does not invalidate the Illinois Sanction, as it "flow[ed] from Plan § 2302 as a result of Oklahoma's failure to comply with other orders of the IRP Board." Defendant's response, p. 16.

Section 2302 empowers the Board to investigate issues—receive testimony, make inquiries, conduct investigations, weigh evidence, review facts, make findings, recommend interpretations, prepare and file a report of its decisions, interpretations, findings, and recommendations and "*exercise the powers granted* in section

2304." App.2, § 2302 (emphasis added). By using the phrase "exercise the powers granted," § 2302 allows the IRP Board to impose sanctions, but only as permitted by § 2304 and the Board's powers under that section are restricted.[19] With respect to a Class 1 issue, it can act only after it has issued a payment order.[20] To be construed as urged by the defendant, § 2302 would have to empower the Board to "impose the sanctions authorized by § 2304," rather than "exercise the powers" granted by § 2304.

The Plan unquestionably authorizes the Board/DRC to issue an order suspending the distribution of allocated fees to collect an amount it has found is owed in a Class 1 dispute. However, the Plan contemplates a determination of the amount owed, as shown by the remedies available if the offending jurisdiction fails to "refund, credit, or transmit fees." Not only may the Board issue a suspension order, it may "apply a penalty up to ten (10) per cent of the *amount* to be refunded..." or permit the jurisdiction granted relief to withhold distribution of fees payable under the Plan to the noncomplying jurisdiction "in an amount not to exceed the *amount specified in the order.*" Section 2304(a)(3) and (5) (emphasis added).

■ By imposing the Illinois Sanction without determining the amount due and issuing a payment order, the IRP Board/ DRC violated the Plan. Rather than invok-

---

18. The Court also finds unpersuasive the OTC's arguments to the effect that the Illinois Sanction was improperly issued by the DRC because the Plan empowers the IRP Board, but not the DRC acting on its behalf, to impose sanctions, or that the DRC improperly directed the member jurisdictions to "withhold" rather than "suspend" funds. See plaintiff's motion, p 13, n. 8, p. 14, n. 8. The Plan uses the terms "suspend" and "withhold" interchangeably. See § 2304(a)(4) and (5).

19. As explained by the plaintiff, § 2300 specifies how issues are raised and placed on the IRP Board's agenda, § 2302 specifies actions the Board can take regarding issues placed on its agenda, and § 2304 specifies how the Board can then grant relief or enforce decisions pertaining to those issues.

20. Section 2304 provides that the Board may take the actions specified in subsections (a)(1)-(6) if, within 45 days of "such order," the noncomplying jurisdiction fails or refuses to comply with "the order." App. 2, § 2304.

ing a process to decide the issue, the Board essentially ordered the State of Oklahoma to settle the controversy. As noted by the defendant, the Plan "specifically contemplates that the IRP Board will conduct investigations, weigh evidence, make findings, and *resolve disputes* between member jurisdictions." Defendant's response, p. 13 (emphasis added). Here, the Board never resolved the dispute by determining the amount owed, which the Plan obligated it to do before the State could be sanctioned for non-payment.

The Court recognizes the delicate relationships between the sovereign states and provinces, which are members of the IRP, and the desire of each and the IRP to resolve disputes by agreement when possible. It also understands that many of the member jurisdictions may have a substantial basis for being frustrated with the State of Oklahoma due to its noncompliance with the Plan and its posture over the course of this extended dispute. However, while the Plan's viability rests on the member jurisdictions' compliance with its reciprocal obligations, it also depends on the Board's adherence to its provisions. As the IRP failed to follow the Plan, the Illinois Sanction was unauthorized. The Board has the power to decide the Illinois dispute. It does not have the power to coerce a settlement of that dispute. The plaintiff has, therefore, demonstrated a substantial likelihood it will succeed on the merits.

Oklahoma also has met its burden of demonstrating that the balance of hardships and effect on the public interest factors weigh in its favor. The defendant argues that it, the other member jurisdictions, and the public have a significant interest in the successful operation of the Plan.[21] An injunction might delay the reso-

lution of the Illinois–Oklahoma dispute, but otherwise would not affect the Plan's functioning, as the Court is not, by its ruling, eviscerating the Plan or emasculating the Board/DRC. A decision that any sanctions be imposed in accordance with the Plan's provisions does not preclude the Board/DRC from enforcing its orders, but merely insures that it, in addition to each member jurisdiction, complies with the Plan. The public has a substantial interest in assuring that a Congressionally sanctioned interstate compact, which the states essentially are compelled to join, is appropriately administered so that the rights of all members are respected. In contrast to the somewhat minimal effect an injunction would have on the defendant and public, is the significant impact on the State of Oklahoma if the injunction does not issue.

The remaining factor -irreparable harm—is difficult to assess due to the unique context in which the dispute arises and the participants involved. The traditional irreparable harm analysis cannot be readily applied. Monetary loss, by itself, is not ordinarily deemed irreparable harm, even where the loss is substantial. Some cases suggest that to be "irreparable" the monetary loss must be such as would threaten the continued existence of the entity involved. Here, in the context of sovereign states which are plainly going to continue to exist regardless of financial loss, such a stringent test could never be met.

Other cases examine the irreparable harm standard from the standpoint of whether the financial loss is temporary or not. Here, the financial losses to Oklahoma from a substantial withholding of revenues, even if "temporary" in the sense of being subject to recompense at some

---

21. To the extent Oklahoma's noncompliance has, as asserted by the defendant, prevented other jurisdictions from receiving money they

are owed, the State's current compliance with the Plan ensures that no longer will occur.

point in the future, nonetheless have a substantial impact beyond that encountered in the usual commercial or other private context. Revenue shortfalls in a particular year impact not only the funds available to spend in that year but also impact the amount budgeted in future years. The impact on critical state services from any significant revenue shortfall may thus have a pervasive impact spreading over several years.

The nature of the harm to Oklahoma from the sanction imposed is compounded by its nature. Although Oklahoma is involved in a Class 1 dispute only with Illinois, the revenue stream from *all* member jurisdictions has been cut off.

Perhaps the most significant harm suffered by Oklahoma from the nature of the sanction is that it is, as a practical matter, precluded from ever seeking judicial review of the DRC or IRP's actions—a right specifically contemplated by the Plan. Judicial review of comparable administrative determinations normally follows a final decision by the administrative or other entity. By attempting to coerce a settlement of the Illinois dispute rather than deciding it, there is unlikely ever to be a final resolution such as would be appropriate for judicial review.[22]

"An 'irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact by monetary damages.'" *Greater Yellowstone Coalition,* 321 F.3d at 1258 (quoting *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 484–85 (3d Cir.2000)). The Court concludes the State has shown the requisite harm.[23]

Accordingly, having found the plaintiff has demonstrated its entitlement to injunctive relief, the State of Oklahoma's motion requesting a preliminary injunction is **GRANTED** and the Court:

1. **ORDERS** the defendant to withdraw, and cease enforcement of, the Illinois Decision and Sanction embodied in the December 13, 2002, Memorandum from the DRC chairman;

2. **ORDERS** the defendant, within five (5) days of the date of this order, to issue and deliver to all member jurisdictions: (1) a copy of this order and (2) a written notice directing all member jurisdictions other than the State of Illinois (a) to immediately resume transmitting to Oklahoma all fees currently accruing and payable under the Plan, until further notice and (b) to report to defendant within ten (10) days of the date of this order the amount of funds payable to Oklahoma that each member jurisdiction currently is holding in suspension;

3. **ORDERS** the defendant, not later than **May 20, 2003,** to report to the Court the amount being held in suspension by each IRP member pursuant to the December 13, 2002, Memorandum from the DRC chairman;

4. **ORDERS** both parties by **June 10, 2003,** to submit briefs: (a) regarding the appropriate disposition of the funds being held in suspension, (b) advising the Court of any actions then being taken to resolve the Illinois–Oklahoma Class 1 dispute, and (c) advising the Court of their respective positions as to further proceedings necessary and appropriate in this case.

---

**22.** Certain of the arguments raised by the OTC here, though found insufficient or unpersuasive in the context of a preliminary injunction, may nonetheless have force or application in a post-decision review of the "agency" action.

**23.** The Court is not persuaded by the defendant's argument that the harm—the total loss of IRP funds—is self-inflicted.

5. As the State of Illinois is the principal party that may be injured by the issuance of this preliminary injunction, and given that all parties appear to concede Illinois will be entitled to some significant amount upon resolution of its Class 1 dispute, the Court concludes it may continue to suspend funds payable to Oklahoma under the Plan. This will satisfy the security requirement of Fed.R.Civ.P. 65(c), to the extent that such security is necessary or appropriate in these circumstances.

6. This preliminary injunction does not, however, prohibit the defendant from proceeding with a determination of the amounts due incident to its resolution of the Illinois claim and, at the appropriate time, issuing a payment order that complies with the Plan nor does it prevent the defendant from taking any other action in accordance with the Plan's provisions.

**IT IS SO ORDERED.**