## S. D. DECKER v. ATCHISON, TOPEKA AND SANTA FE RAILROAD COMPANY.

1, RAILROADS—*Rules Of—Reasonable.* A railroad corporation has the right to establish reasonable rules and regulations for the government and use of its property.

2. SAME. On the 16th day of September, 1893, the defendant railroad company prescribed a certain rule for the government of its trains entering the Cherokee Outlet, providing that no train should enter said Outlet within six hours of 12 o'clock noon of said day, and that trains before entering said Outlet should be stationed at the edge of said land thirty minutes before the hour of opening and should not be entered by passengers earlier than thirty minutes before the said hour of 12 o'clock noon, *held*, to be a reasonable rule, and where a party is ejected from the train of the defendant company for failing to comply with said rule, he cannot recover damages from said company for being so ejected.

*Error from the District Court of Logan County.*

Action for damages by S. D. Decker against the Atchison, Topeka & Santa Fe Railroad company.  Case tried in the district court of Logan county, taken from the jury and jury instructed to return a verdict for the defendant.   Motion for a new trial filed and over-ruled.   Exception taken and case brought here on error.   The facts are stated in the opinion.   Affirmed.

*S. D. Decker* and *P. O. Cassidy*, for plaintiff in error.

*Henry E. Asp*, *J. W. Shartel* and *J. R. Cottingham*, for defendant in error.

The opinion of the court was delivered by

SCOTT, J.:   This is an action commenced by the plaintiff in error, plaintiff below, in the district court of Logan county, against the defendant in error, the Atchison, Topeka & Santa Fe Railroad company, for damages for the expulsion of plaintiff from the passenger train of the said defendant.

The petition alleges that on the morning of the 16th day of September, 1893, the plaintiff, who is a resident of the city of Guthrie, purchased a ticket from the defendant's agent at Guthrie, paying ninety cents therefor, by the terms of which said defendant bound itself to carry plaintiff from Guthrie to Wharton without delays or stoppages other than those incident to the usual business of said defendant and its said road in the ordinary course of traffic; that after purchasing said ticket plaintiff boarded the regular north-bound passenger train, due at Guthrie at 5:45 o'clock A. M., and peaceably and quietly took a seat in one of defendant's coaches; that, when said train arrived at Orlando, the conductor in charge of said train stopped the same and ordered plaintiff to leave said coach and get off the train; that plaintiff refused to do so; that said conductor then, calling to his aid other employes of said train, assaulted plaintiff and did then and

there violently, unlawfully, forcibly, wilfully and maliciously eject plaintiff from said train and violently and wrongfully threw him to the ground, thereby subjecting him to great inconvenience, disgrace, outrage and insult; that the health of plaintiff was very poor, and, by reason of being so ejected, he was compelled to stand for hours in the heat and dust in an immense throng of people, with no protection from the great heat of the sun, thereby subjecting him to, and causing him, great bodily pain and greatly injuring his health and causing him great mental anguish and suffering to his great damage in the sum of $2,000.

The defendant, answering, admits that at the time mentioned in the petition it operated a line of railroad through the Territory of Oklahoma and through the territory known as the "Cherokee Strip;" that the north line of Logan county borders on the south line of said "Cherokee Strip;" that said Guthrie, the county seat of Logan county, is situated on the line of said defendant's road; that the said defendant had a station at Guthrie for the purpose of receiving and disembarking passengers from its trains; that said defendant owned a station at Orlando, as alleged in said petition; that said defendant owned and had a station at Wharton, in the "Cherokee Strip," as alleged in said petition. Defendant further admits that on the 16th day of September, 1893, by proclamation of the president of the United States, said "Cherokee Strip" was thrown open to settlement by the public, but avers that on the 11th day of September, 1893, the honorable secretary of the interior duly made and promulgated the following order:

"DEPARTMENT OF THE INTERIOR,
"Washington, Sept. 11, 1893.

"ORDER.

"In view of the proclamation issued by the president of the United States, fixing 12 o'clock noon of

September 16, 1893, as the hour at which the Cherokee Outlet will be opened to settlement, and to the end that the rules and regulations heretofore prescribed for said opening may be more effectually executed, I hereby direct that no railroad train be permitted to enter said Outlet during the six hours before said time of opening. For three hours after said time of opening, trains will be allowed to enter said Outlet only under the following regulations:

"1. They must be for general use, and not leased or chartered to any favored passenger or passengers.

"2. Trains must be stationed at the edge of said land at least thirty minutes before the hour of opening, and shall not be entered by passengers earlier than thirty minutes before the hour of opening.

"3. No one shall enter either of said trains as a passenger unless he holds a certificate from one of the booths.

"4. The trains may start upon said land any time after the hour of opening.

"5. Trains must stop at every station, and at intermediate points, not more than five miles apart.

"6. The trains will be limited in speed to fifteen miles an hour.

"7. The regular local rates of passenger charges shall not be exceeded.

"8. No one shall be allowed to board said train after they enter the Strip.

"United States officers in charge will give effect to this order.                    HOKE SMITH,
                    "Secretary of the Interior."

That such order was duly published in the Territory of Oklahoma, and of which said order and the terms thereof said plaintiff was fully advised. That the Atchison, Topeka & Santa Fe Railroad company ran its trains on said date into said Cherokee Strip in conformity with said order, of which the plaintiff and the general public had notice and trains were not run on said date on the regular schedule of said company.

Said defendant further avers that if the said plaintiff was ejected from the train of this defendant, as alleged in said complaint. he was so ejected by the officers and agents of the United States and not by the servants or employes of the defendant.

The plaintiff replied admitting that on the 16th day of September, 1893, the Cherokee Strip was opened for settlement as set out in the answer and that the proclamation of the honorable secretary of the interior was truly set out in said answer, and that the plaintiff had notice thereof. Plaintiff denied that he was ejected from the cars of the defendant by the officers of the United States government or that he was ejected from said cars by virtue of or under color of said proclamation of the honorable secretary of the interior, but that he was unlawfully and violently ejected from said cars by the servants and employes of the defendant as set out in the petition. Plaintiff denied that he in any manner disobeyed the directions and rules in said proclamation, or did anything therein prohibited.

On the 9th day of October, 1894, the case was tried by jury, before Chief Justice Dale, presiding judge of the First judicial district. Plaintiff introduced his testimony, and a demurrer was interposed by the defendant. The court took the case from the jury, entered up a judgment for costs against the plaintiff and in favor of the defendant and held the cause for dismissal. Thereupon, the plaintiff filed his motion for a new trial, which was by the court overruled. The plaintiff brings error and asks that the cause be reversed, assigning as error:

1. The sustaining of the defendant's demurrer to plaintiff's evidence.

2. Discharging the jury and rendering judgment against the defendant for costs.

3. Overruling plaintiff's motion for a new trial.

The entire question will be considered briefly, as a lengthy discussion is unnecessary. As we view it the case turns largely upon the proposition as to the right of a railroad company to prescribe reasonable rules and regulations for the government and use of its property, and as to whether the rule prescribed by the defendant in error on this day in obedience to the order of the secretary of the interior, or in pursuance of an exigency regarded by the company on their own responsibility as sufficient, was a reasonable rule. The evidence fails to sustain the allegations of the petition as to violence and we think the case can be decided properly upon the question of the reasonableness of the rule established for the 16th day of September, 1893, without discussing the proposition as to whether the order made by the secretary of the interior was binding upon the company or not. It is sufficient upon this question to say that the order of the secretary was obeyed to the letter by the defendant in error, and it will certainly occur to an impartial mind that the company can stand upon its own rights under the law without seeking shelter behind the order of the secretary of the interior.

There is no doctrine of corporation law better settled than the right of a railroad corporation to prescribe reasonable rules and regulations for the government and use of its property. The only restriction under the law is, that the rules must be reasonable. It is equally well settled that it is the duty of the purchaser of a ticket to inform himself of such rules and regulations, and upon doing so, to conform to the customs of the road in transporting passengers. We take it that these propositions admit of no controversy. If it be true that a railroad corporation has this right under the law, why should it not be true also that on such an occasion as the opening of several million acres of land to settlement under a

specific law of congress and by special direction and supervision of the secretary of the interior, that it should have the right to prescribe reasonable rules and regulations for carrying into effect the intent and purpose of the law. It was the duty of the company as a carrier of passengers to carry passengers, but only according to law. Congress had passed a law providing for the opening of the Cherokee Outlet. The president under this law proceeded to carry out its provisions. The secretary of the interior prescribed certain rules and regulations in order that the intention and purpose of the law might be better effected. The defendant in error did the same. The rule complained of by the plaintiff in error is that he was required to debark at the line. This rule was established by the defendant in error to give effect to the following clause of the order of the secretary of the interior:

"That the trains must be stationed at the edge of said land thirty minutes before the hour of opening and shall not be entered by passengers earlier than thirty minutes before the hour of opening."

Whether bound to conform to this order or not, the railroad company regarded it as a reasonable rule to establish on a great occasion of this kind and put it in force, and in order to give effect thereto, were compelled to eject the plaintiff in error from the train upon his refusal to debark. If the plaintiff in error was desiring to enter the lands to be opened to settlement he can not complain of the company obeying the order of the secretary of the interior, and if not, and the rule is a reasonable one, he was bound to know that six hours before twelve o'clock noon of September 16, 1893, no passenger train would pass the north line of said territory; that on the said 16th day of September, 1893, regular passenger trains were not scheduled

as through trains at the hour said plaintiff in error sought for through passage.

Was this rule prescribed by the defendant in error on the 16th day of September, 1893, a reasonable rule?

The opening of the Cherokee Outlet to settlement has gone down into history as a scene and an occasion unequaled by any similar event of modern times. A vast domain was opened to homestead settlement in a day, and more than one hundred thousand people waited upon the borders for the hour of noon, when they could break forth on a wild rush for either town lots or homestead lands. At the particular point where the trains of the defendant in error were located, thousands thronged to board the first train, to enter, and, if possible, gain some advantage and get to the promised land before the awful rush. Had trains gone into the country prior to 12 o'clock, hundreds would have become violators of the law, no doubt, and had the defendant in error permitted those already aboard when the trains arrived at the line to remain in the coaches, those waiting on the line to enter trains according to the order of the secretary of the interior, and the rules prescribed by the company, would have been placed at a disadvantage and their rights, under the law, would have been unequal and prejudiced thereby.

Yes, this rule was a reasonable one, and in addition to this, was adopted by defendant in error by order of the secretary of the interior, and for this court to hold, or the court below to have held, as a matter of law, that it was an unreasonable rule, would, we think, have been error.

The lower court did not err in sustaining the demurrer to the evidence, and ordering a dismissal of the case under the state of the pleadings and proof, and the judgment rendered below will be affirmed with costs.

By the Court:  It is so ordered.

Dale, C. J., having presided below, not sitting; all the other Justices concurring.