## CHICAGO, R. I. & P. RY. CO. v. ARMSTRONG.

### No. 1135.   Opinion Filed November 14, 1911.

#### (120 Pac. 952.)

1.  **CARRIERS—Use of Premises—Exclusion of Persons from Depots.**
    A railway company has the right to exclude from its depots and warerooms persons who come there in an intoxicated condition, and who are turbulent and troublesome and disturb and interfere with the agents and employees of the company in the discharge of their work, and may also exclude therefrom those who are reported to be dishonest, and on account of whose past presence in and about its depots and warerooms freight had been removed without the company's consent, and for which it was compelled to pay consignee the value thereof.

2.  **TORTS—Interference with Business—Exclusion of Persons from Depots—Actions for Damages—Defenses.** In an action--for damages on account of the issuance of a letter, notifying local shippers that a railway company will refuse to allow plaintiff to haul or handle any more freight from its depot, and to secure another drayman, it is error to strike from the answer allegations charging that it was necessary, in the course of his business, for the plaintiff so excluded to go about its platform and premises unattended by its agents, and to handle and have access to goods other than those for which he had orders; that, while plaintiff was acting as drayman, merchandise had been taken from its depot without its knowledge or consent, and for which it had been compelled to pay consignee; that said plaintiff was frequently at its depot in an intoxicated condition, was contentious, turbulent, troublesome, and disagreeable, disturbed and interfered with its agents and employees in the discharge of their work; had been arrested and convicted of drunkenness a number of times; had been arrested on the charge of theft, and all of which facts were at the time known to defendant's agents and employees at its local station, where plaintiff had been engaged in carrying on his drayage business—such allegations, if proved, being a justification of the company's act, such as will bar a recovery.

(Syllabus by Sharp, C.)

*Error from Texas County Court; R. L. Davis, Judge.*

Action by F. L. Armstrong against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Plaintiff's petition charged that on and prior to April 27, 1908, he was engaged in conducting for hire a general drayage business in the town of Guymon, Okla.; that as such drayman he hauled freight and express to and from the depot of defendant company for his customers upon their order, and that the services by him rendered were satisfactory; that on April 27, 1908, defendant, acting through its agent and employee, D. P. Bissell, with malicious intent to injure and deprive plaintiff of his usual means of livelihood and to injure him in his business and to boycott him, notified plaintiff's customers in writing that defendant company would no longer allow plaintiff to haul or handle any more freight or express; that the order was as follows:

"Guymon, Oklahoma, April 27, 1908. All Concerned: We are advised by our special agents to refuse to allow drayman Armstrong to haul or to handle any more freight or express. You will please secure another drayman. [Signed] D. P. Bissell, Agent;"

that in the serving of said notices, defendant company acted willfully, maliciously, and without justification, and for the purpose of injuring and depriving plaintiff of his business, and that the acts done did injure and deprive plaintiff of his business, on which he at the time depended for a livelihood for himself and family; that defendant continued to refuse to deliver freight or express to plaintiff, notwithstanding the written orders held by said plaintiff therefor.

The amended answer of defendant company contains ten paragraphs. The first is a general denial; the second and third charge in substance that defendant company was at the time a common carrier and maintained at Guymon a depot for storing goods, wares, merchandise, and other property received by freight or for shipment, and that there was at all times contained in said depot a large amount of freight belonging to its patrons, which

it held in its custody as a common carrier or as warehouseman; that the freight by it received, whether for shipment from or delivery at Guymon, was unloaded on the platform, and there remained until the same could be stored in its warerooms. Paragraph 9 contains a specific denial of any malice toward plaintiff, in the issuance of said notices; says that the same was done for the protection of defendant's property in its charge and under its control, and for which it was responsible. Paragraph 10 charges that if defendant has sustained any loss of patronage, that it was due to his own conduct and habits, and not by reason of any act or fault of defendant company, its agents or employees.

Paragraphs 5, 6, 7, and 8, in substance, charge that the property of plaintiff's patrons was intermingled upon the platform with the property of other shippers, and that, while acting as drayman, it was necessary for plaintiff to go upon defendant's platform and premises unattended by defendant's employees, and to handle and have access to the goods, other than those for which he had orders; that at various times, while plaintiff had been acting as drayman, packages and boxes of goods, wares, and merchandise had been taken from defendant's depot without its knowledge or consent, and that defendant had been compelled to pay the consignees thereof the value of such goods by reason of their loss; that plaintiff had frequently been to its depot in an intoxicated condition, and was turbulent, troublesome, contentious, and disagreeable, and disturbed and interfered with its agents and employees in the discharge of their work; that he had been arrested, tried, and convicted of drunkenness a number of times in Guymon during the times mentioned in the amended petition; that the agents and employees of defendant company had been informed that plaintiff was of bad reputation, reported to be dishonest, untruthful, and unreliable, and that plaintiff had sold and given away packages and boxes of goods, wares, and merchandise from his dray, which he had removed from the depot of defendant company at Guymon without its consent, and that the agents and employees of defendant company believed said charges and reports were true and that

plaintiff was unworthy of confidence, and that such a person should not be permitted to have access to its warerooms, and that a short time prior to the acts complained of in plaintiff's petition plaintiff had been arrested in the town of Guymon on the charge of stealing money, and that defendant's agents and employees at Guymon knew of such charge and report, and that from all the charges concerning said plaintiff, known to the agents and employees of the defendant company at the time, it was believed that such plaintiff was untrustworthy and not a suitable and safe person to permit to have access in and around its depot and warehouse, such as was usually accorded to draymen at said depot.   Plaintiff thereupon filed a motion to strike from the answer paragraphs 4, 5, 6, 7, 8, 9, and 10, because it was charged that the same did not constitute a defense to plaintiff's amended petition.   This motion was sustained in part, the court striking from the answer paragraphs 5 to 8, inclusive, which action of the court, among others, is assigned in this court as error.

*M. A. Low, C. O. Blake, E. E. Blake,* and *H. B. Low,* for plaintiff in error.

*Wiley & Edens,* for defendant in error.

Opinion by SHARP, C.   (after stating the facts as above). It is indispensable to the successful carrying on of the business of a railway company that passenger and freight depots be maintained at stations along its line.   In Oklahoma this is made mandatory by sec. 26, art. 9, of the Constitution, which provides:

"It shall be the duty of each and every railway company, subject to the provisions herein, to provide and maintain adequate, comfortable, and clean depots, and depot buildings, at its several stations, for the accommodation of passengers, and said depot buildings shall be kept well lighted and warmed for the comfort and accommodation of the traveling public; and all such roads shall keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing and delivering of all freight handled by such roads."

The liability of a railway company for freight under its charge and in its custody varies from insurance to reasonable

care, depending upon whether the relationship existing is that of carrier or warehouseman; but, in either event, there exists on the part of the carrier a duty and attendant liability, dependent upon the facts and the law applicable thereto.

There being imposed upon the carrier the legal duty to provide and maintain a suitable freight depot and building for the receiving, handling, storing, and delivery of all freight received and forwarded by it, for the accommodation of its patrons, as well as for its own benefit, there is impliedly conferred upon it, as a necessary incident of its business, the right to exercise over its depots and station grounds such reasonable control and supervision as is necessary in the discharge of its duty to the public, and for the convenience, comfort, and safety of its patrons, as well as for its own protection. *Donovan v. Pennsylvania Railway Co.*, 199 U. S. 284, 26 Sup. Ct. 91, 50 L. Ed. 198. That a railway company, both as the owner of the depot and station grounds connected with the road and as a carrier of freight, has authority to make reasonable and suitable regulations in regard to those making use of its property, and so long as the same remain reasonable and not in violation of some law or some regulation made in pursuance thereof, we think cannot be denied. Such regulations may depend largely upon local conditions. In order to be able to perform these imposed duties, it is requisite that the right to make reasonable rules and regulations for the conduct of its business be given. In the proper discharge of its business, it is not simply empowered, but is bound to exercise proper control over its property and the property of others intrusted to its care. This power, which must be conceded, must of necessity be exercised through its officers, agents, and employees, which is the only mode by which a corporation can exercise its powers. While it may be said that by opening the doors to its depots, the company gives an implied license to any and all persons to enter, it may be answered that by so doing, it *prima facie* gives an implied license, but such license is revocable in its nature, and, if actually revoked and due notice given to an individual or class of individuals, and they still persist in

entering without a license, the owner has the right to exclude them by force, if necessary. *Commonwealth v. Power et al.,* 7 Metc. (Mass.) 602, 41 Am. Dec. 465; *Harris v. Stevens,* 31 Vt. 79, 73 Am. Dec. 341.

In *Summitt v. State,* 8 Lea (Tenn.) 413, 41 Am. Rep. 637, it is said in the syllabus:

"A railroad company may make and enforce by its agents reasonable and necessary rules for the transaction of its business, and for the proper and orderly management of its depot and other buildings open to the public. These rules, however, must be reasonable, and such as do not unnecessarily infringe upon the rights of the public and others having or carrying on business in connection with railroad traffic and travel."

In *Commonwealth v. Power, supra,* it was said by Shaw, C. J.:

"That if Power had been placed in charge of the depot by the corporation, as superintendent, he had all the authority of the corporation, both as owners and occupiers of real estate, and also as carriers of passengers, incident to the duty of control and management. That this power and authority of the corporation extended to the reasonable regulation of the conduct of all persons using the railroad, or having occasion to resort to the depots, for any purpose. * * * Or if the presence of such persons, for such purpose, is a hindrance and interruption to the officers and servants of the corporation, in the performance of their respective and proper duties to the corporation, as passenger carriers; then the prohibition of such persons from entering upon the platform is a reasonable and proper regulation, and a person who, after actual or constructive notice of such regulation, violates or attempts to violate it, thereby loses his license to enter the depot; that such license as to him may be revoked."

In *Thurston v. Union Pacific Railroad Co.,* 4 Dill. 321, Fed. Cas. No. 14,019, it was claimed that the plaintiff, who had purchased a ticket for transportation, was a notorious gambler and was then engaged in traveling on its road for the purpose of plying his calling. The court said:

"It would not be obliged to carry one whose ostensible business might be to injure the line; one fleeing from justice; one going upon the train to assault a passenger, commit larceny or robbery, or for interfering with the proper regulation of the

Chicago, R. I. & P. Ry. Co. v. Armstrong.

company, or for gambling in any form, or committing any crime. * * * As gambling is a crime under the state laws, it is not even necessary for the company to have a rule against it. * * * Whether the plaintiff was going upon the train for gambling purposes, or whether, from his previous course, the defendant might reasonably infer that such was his purpose, is a question of fact for the jury." 6 Cyc. 550.

Such regulations as will enable a railway corporation to execute its difficult and responsible duties, insure the comfort of its passengers, and protect itself from wrong and imposition, it has an undoubted right to prescribe, provided always that such regulations are reasonable and just. Hutchinson on Carriers, secs. 989, 1078. In its passenger service, it has the right to require that all passengers shall preserve order; that they shall be seated and not stand up in the passageways or upon the car platforms, and that they shall abstain from any act which tends to impede or interrupt the conductors and other employees in the transaction of their necessary business. Reasonable regulations may not only be prescribed, but enforced by such reasonable means as the company may have at its command; for, without some use of power to give them effect, such regulations would be of little value. *Hibbard v. New York & Erie Ry. Co.,* 15 N. Y. 458. The same rule should be applied with like force to those having business with the carrier concerning freight, and who may have a right to enter the depots or station grounds of the company. Certainly, it would not be said that a railway company, having the admitted right to evict from its train or station grounds those violating its reasonable rules and regulations, and with whom it may be at the time under contract for transportation, cannot exercise a similar authority, on proper occasions and under justifiable circumstances, over one to whom it does not directly have any contract relation, but who is acting independently of the company, either as a contractor, or for hire in serving its local patrons. Undoubtedly the authority exists to exercise the same reasonable control over its warerooms and depots and freight in its charge, whether indoors or upon its

platforms, as it has over its equipment used in its passenger service.

In *Decker v. Atchison, etc., Ry. Co.*, 3 Okla. 553, 41 Pac. 610, it is said:

"There is no doctrine.of corporation law better settled than the right of a railroad corporation to prescribe reasonable rules and regulations for the government and use of its property. The only restriction under the law is that the rules must be reasonable."

That a railway company has the right to exercise reasonable control over those using for the time being its property must follow as a necessary incident to the right of property. It is not bound to admit to its depots and station grounds those who refuse to obey the company's reasonable rules and regulations, or who are guilty of gross and vulgar habits or conduct, or who make a disturbance, or are turbulent and troublesome, or those under the influence of liquor, who interfere with the agents and employees of the company in the discharge of their work, or whose reputation for honesty is bad, and which facts are known to the agents and employees at the time; and, *a fortiori*, whose characters are unequivocably bad; nor is it bound to admit to its premises those whose presence would interfere with the interest or patronage of the proprietors, so as to make the business less lucrative to them. *Jencks v. Coleman*, 2 Sumn. 221, Fed. Cas. No. 7,258. In this case, Story, J., said:

"I think the proprietors had the right to inquire into such intent and motives, and to act upon the reasonable presumptions, which arose in regard to them. Suppose a known or suspected thief were to come on board. Would they not have a right to refuse him a passage? Might they not justly act upon the presumption that his object was unlawful? Suppose a person were to come on board, who was habitually drunk and gross in his behavior, and obscene in his language, so as to be a public annoyance. Might not the proprietors refuse to allow him a passage? I think they might, upon the just presumption of what his conduct would be."

It was said by the court in *Harris v. Stevens, supra,* speaking of an implied license to enter the station house of the railway company:

"The existence of this right in a corporation would seem to be indispensable to the comfort of the passengers in going to and from the cars, and in transacting that business with the agents of the company, which is necessarily done at the stations, and also the protection of property intrusted to its care for the safety of which it is held to the strictest accountability."

It is not necessary that those in charge of the property of a railway company be compelled to wait until some covert act of theft, or other offense be committed, that they may act to prevent the occurrence or recurrence of such act or offense. It is quite important and essential that it have authority to prevent, as the power to stop or repress the commission of wrongful acts. *Vinton v. Middlesex Railway Co.,* 11 Allen (Mass.) 304, 87 Am. Dec. 714; *Exton v. Central Ry. of N. J.,* 63 N. J. Law, 356, 46 Atl. 1099, 56 L. R. A. 508; *New Orleans, etc., Ry. Co. v. Burke,* 53 Miss. 200, 24 Am. Rep. 689; *Pittsburgh, etc., Ry. Co. v. Hinds,* 53 Pa. 512, 91 Am. Dec. 224.

The objection may be made that the exercise of such power is liable to abuse, and may become the instrument of oppression, but the same is true of many other salutary rules of law. The safeguard against any unjust or unauthorized use of the power is to be found in the consideration that it can never be properly exercised except in cases where it can be satisfactorily proved that the condition or conduct, past or present, of a person was such as to render it reasonably certain that, if permitted, he would again continue his former course of conduct.

Such being the case, it was error in the trial court to strike from defendant's answer those paragraphs thereof which set up specifically and generally the alleged bad character of plaintiff. These were issues that defendant had the right to have tried out. If true, they would justify the defendant in the action of its agent in sending out the letters complained of; while, on the other hand, if upon the trial it should be found that the charges so stricken out were in fact untrue, it would go to show that

Opinion of the Court.

defendant, through its agent, acted without proper justification in the premises.

Having reached this conclusion, we think also it was error for the court to give the fifteenth instruction, as follows:

"You are further instructed that plaintiff had a right to receive freight, express and baggage at the depot of the defendant so long as his customers, the consignees of such goods, were willing for him to haul it; and the fact that the plaintiff was a thief, or a drunkard, would not in law justify the defendant in refusing him that right."

While one known to be a thief, or a drunkard, has the right to engage in honest employment, it does not follow, as in the case under consideration, that in such a case, by reason of such employment, he has the absolute and unqualified right to go unattended upon and about the premises of one, not his employer, disturbing and interfering with the agents and employees of such third party, while in the discharge of their work.

Counsel for defendant in error in this cause are admonished against the use of argument such as made during the trial below. While, in the heat of argument, attorneys often say things they do not intend, still the language used in this case is of such extreme nature that it is hard for us to believe that the same was not said with the intent to influence the action of the jury, by appealing to that bias and prejudice which so often exists in such cases.

Because of the action of the court in striking paragraphs 5, 6, 7, and 8 from defendant's amended answer, and in giving instruction No. 15, the judgment of the court below should be reversed, and the cause remanded, with instructions to proceed in accordance with this opinion.

By the Court: It is so ordered.

All the Justices concur.