FILED
United States Court of Appeals
Tenth Circuit

August 2, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID L. BROWN,

        Plaintiff - Appellant,

    v.

J. D. EPPLER; RAY WILLARD; JANE
DOE; JANET DOE; METROPOLITAN
TULSA TRANSIT AUTHORITY; PAUL
T. BOUDREAUX; RICHARDSON
RICHARDSON BOUDREAUX,

        Defendants - Appellees.

No. 11-5093

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. 4:09-CV-00466-CVE-TLW)**

Ian J. Kellogg, Morrison & Foerster LLP, Denver, Colorado (Brian R. Matsui,
Morrison & Foerster LLP, Washington, D.C., and Colin M. O'Brien, Morrision &
Foerster LLP, Denver, Colorado, with him on the briefs), for Plaintiff-Appellant.

David L. Brown, Appellant Pro Se, McAlester, Oklahoma, on the briefs for
Plaintiff-Appellant.

Paul T. Boudreaux (Melissa A. Herr with him on the briefs), Richardson
Richardson Boudreaux Keesling, PLLC, Tulsa, Oklahoma, for Defendants-
Appellees.

Before **LUCERO**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. Introduction

Plaintiff David Brown brings this appeal from the dismissal of his action challenging his ban from using public transportation provided by the Metropolitan Tulsa Transit Authority (the "MTTA"). Brown asserted claims arising under the United States Constitution, federal civil rights laws, and Oklahoma state law. The district court granted summary judgment pursuant to Fed. R. Civ. P. 56(a) in favor of the MTTA as well as defendants J.D. Eppler, Ray Willard, Jane Doe, and Janet Doe (collectively "employee defendants"). In so doing, the court concluded Brown did not have a constitutionally protected property interest in access to MTTA services.

Additionally, Brown has moved before this court to proceed *in forma pauperis.* Brown was not incarcerated when he initiated suit in federal court. He was incarcerated, however, when he filed his notice of appeal. During the pendency of this appeal, Brown has been released from prison. Brown's *ifp* motion therefore requires this court to determine the scope of the Prisoner Litigation Reform Act ("PLRA") and its applicability to these unusual factual and procedural circumstances.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** the district court's grant of summary judgment to The MTTA on Brown's

-2-

procedural due process claims and **affirms** the judgment of the district court in all other respects.  Brown's motion to proceed *ifp* is **granted**.

## II.    Background

Brown is a resident of Tulsa, Oklahoma.  The employee defendants work for the MTTA.  The attorney defendants are counsel for the MTTA and the employee defendants.  The MTTA is a trust created under Tulsa City Ordinance Title 39, Ch. 9.  *See* Okla. Stat. tit. 60 § 176–80 (setting forth rules governing municipal trusts in Oklahoma.)  The incidents underlying Brown's dispute with the MTTA were aptly summarized by the district court:

> The dispute at issue began on or about April 5, 2007.  On that day, plaintiff was walking toward an MTTA bus stop with the intent to ride a bus, and saw a bus approaching.  Brown had not yet reached the stop but, in an attempt to make the bus wait for him, held up a bus transfer pass.  The bus did not stop, and Brown waited for it to return.  When it did, Brown boarded, and asked the driver, Jane Doe, why she had not stopped for him when she passed him.  Brown says that he told her that other drivers stop for people in that situation, and she responded that she was not like other drivers.  Brown claims that he then sat down in the back of the bus and that, without further provocation from him, the driver continued to harass him.  He claims that she called her supervisor, Janet Doe, over the bus's radio, and informed her that she was having a problem with a passenger.  Janet Doe allegedly then told Brown to "sit down" and "shut up," or she would have him removed from the bus.  Brown claims that he did not say anything more to Jane Doe, but that she continued to speak to him.  She stopped the bus soon thereafter and told him that if he didn't get off the bus, she would call the police.  Brown left the bus, but called the bus driver a "nappy-haired whore" as he exited.  He claims that when he tried to board another bus that afternoon, the driver would not admit him as a passenger.  Eppler attests that he was notified of plaintiff's conduct on April 5, 2007, and that plaintiff was intoxicated at the time of his removal from the bus.  As a result

of the events on April 5, plaintiff was banned from MTTA bus use for approximately thirty days. Following his removal from the bus in April 2007, Brown made an oral complaint to the MTTA. However, he claims that no action was taken on his behalf.

Despite the imposition of the thirty-day ban, plaintiff was able at times to ride MTTA buses. However, plaintiff was removed from an MTTA bus in May 2007, allegedly for being intoxicated and disruptive. . . . [A]t some point after his removal from a bus in May 2007, plaintiff was walking past the downtown bus station. While across the street from the station, he saw Eppler, and began to yell at him. Plaintiff claims that he yelled only that he was going to sue Eppler. Defendants allege that plaintiff was intoxicated, and that he shouted obscenities across the street at both Eppler and Tulsa County Deputy Sheriff Geza Horvath. Horvath then left the MTTA premises, walked toward plaintiff, and instructed him to leave the area. Brown continued to make disparaging remarks to Horvath, including allegations of racism. He says that after he made those allegations, Horvath told him that he was under arrest. Brown ran across the street, but then stopped and was arrested by Horvath. He was charged with public drunkenness, resisting an officer, and breach of the peace. Following his arrest, he was permanently banned from all future MTTA bus use. Brown alleges that Willard took a picture of him at the time of his arrest, and posted it around the MTTA bus station.

Both Eppler and Willard attest that the removal of plaintiff from buses in April and May 2007, and the subsequent ban on plaintiff's future use of MTTA buses, was a result of plaintiff's actions, including public intoxication, disruptive behavior, and criminal conduct. Willard further attests that "[t]he ban o[n] [p]laintiff's future use of MTTA buses was a decision made by MTTA pursuant to MTTA's published and written rules against any fighting, throwing of any objects, pushing, rough or loud behavior or vulgar language and pursuant to MTTA's policy to ensure that their customers have a safe and enjoyable ride." Eppler claims that he was not involved in the decision to impose a permanent ban on plaintiff's use of the MTTA buses. Defendants state that "[i]t was not and has never been the policy of MTTA to ban anyone based upon their race."

-4-

According to plaintiff, he had a conversation with Eppler in July 2008 during which plaintiff asked Eppler how long he was going to be banned from the bus and Eppler told plaintiff to speak to Willard. Brown says he went to the MTTA office in July or August 2008, and that he spoke to Willard. However, he claims that Willard was rude to him, that he was not permitted to make any statements, and that he was told to leave the office. Willard denies that plaintiff came to his office to discuss the ban. In his complaint, Brown claims that he requested a hearing or other means by which to "contest the arbitrary and capricious" decision to ban him from the bus, but that his request was ignored and denied. However, defendants claim that while plaintiff orally contested his ban, he "never asked for a hearing or for an alternative method to contest said ban, even though he had ample opportunity to do so."

*Brown v. Eppler*, 788 F. Supp. 2d 1261, 1264–66 (N.D. Okla. 2011).

Brown brought suit in Oklahoma state court against the MTTA and employee defendants. After his state court suit was dismissed without prejudice due to lack of jurisdiction, Brown filed the present federal action in the Northern District of Oklahoma, re-asserting his causes of action against the employee defendants and adding a cause of action against the attorney defendants for conspiracy to violate his constitutional rights by having his state court action improperly dismissed. The district court dismissed the claims against the attorney defendants under Fed. R. Civ. P. 12(b)(6). The MTTA and employee defendants moved for summary judgment on Brown's remaining claims. Brown moved for partial summary judgment on liability for his procedural due process claim against the MTTA. He also moved to cite and sanction defendants Eppler and Willard for aggravated perjury and, separately, sought sanctions under Fed. R.

Civ. P. 11.  The district court granted the defendants' motion for summary judgment and denied Brown's motion for summary judgment as well as his motions for sanctions against Eppler and Willard.  This appeal followed.

## III.  Discussion

### A.  Procedural Due Process Claim

This court reviews a grant of summary judgment de novo, applying the same standard as the district court.  *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The district court granted summary judgment in favor of the MTTA and employee defendants on Brown's procedural due process claims because it concluded Brown did not have a protected property interest in access to MTTA public transportation.  "Procedural due process guarantees apply only to those liberty and property interests encompassed by the fourteenth amendment."  *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir. 1991).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an

independent source such as state law." *Id.*; *see also Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991) ("Property interests . . . are created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract."). "When analyzing whether a plaintiff presents a legitimate claim of entitlement, we focus on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome." *Jacobs*, 927 F.2d at 1116.

As both parties acknowledge, The MTTA is a common carrier under Oklahoma law. *See* Okla. Stat. tit. 13 § 4 ("Everyone who offers to the public to carry persons, property or messages is a common carrier of whatever he thus offers to carry."). The district court analyzed Oklahoma's common carrier statute to determine whether Brown had a protected property interest in access to MTTA buses. *See* Okla. Stat. tit. 13 § 5 ("A common carrier must, if able to do so, accept and carry whatever is offered to him, at a reasonable time and place, of a kind that he undertakes or is accustomed to carry."); *id.* § 43 ("A common carrier of persons may make rules for the conduct of his business, and may require passengers to conform to them, if they are lawful, public, uniform in their application, and reasonable."); *id.* § 45 ("A passenger who refuses to pay his fare, or to conform to any lawful regulation of the carrier, may be ejected from the vehicle by the carrier."). The court confined its inquiry to determining "the degree to which the state has restrained the discretion that MTTA has to provide

the benefit of its services." *Brown*, 788 F. Supp. 2d at 1269. The district court concluded Oklahoma law places no significant restraints on the MTTA's ability to alter its rules of conduct for its passengers, so long as such rules are reasonable. *Id.* at 1271; *see also Chicago R.I. & P. Ry. Co. v. Armstrong*, 120 P. 952, 954 (Okla. 1911) ("While it may be said that by opening the doors to its depots, the company gives an implied license to any and all persons to enter, it may be answered that by so doing, it prima facie gives an implied license, but such license is revocable in its nature, and, if actually revoked and due notice given to an individual . . . and [he] still persist[s] in entering without a license, the owner has the right to exclude [him] by force, if necessary."). The district court deemed irrelevant the question whether the MTTA's then-existing rules of conduct may have limited its discretion to exclude passengers from its service because the MTTA had the discretion to change such rules at any time. *Brown*, 788 F. Supp. 2d at 271.

We conclude the district court's analysis was in error. By focusing on the degree of discretion afforded to the MTTA to make rules governing access to its services, the district court overlooked the possibility the MTTA had constrained its own discretion to deny service to a sufficient extent as to give rise to a "legitimate claim of entitlement" to service. Under the district court's interpretation of the Due Process Clause, it mattered not whether Brown actually violated the MTTA's rules of conduct because, even if he had not, the rules could

always be changed. This approach is inconsistent with Supreme Court and Tenth Circuit precedent, which, when analyzing whether a protected interest exists, focuses on whether there are "specific directives *to the decisionmaker* that if the regulations' substantive predicates are present, a particular outcome must follow." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989) (emphasis added); *Grenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-12 (1979) (recognizing protected interest in parole because of mandatory constraints on Board of Parole); *Hyde Park Co. v. Santa Fe. City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) ("[A] right to a particular decision reached by applying rules to facts constitutes 'property.'").

Analyzed under the appropriate analytical framework, whether Brown has a protected property interest in continued access to MTTA public transportation depends upon whether the MTTA's rules sufficiently constrain its own discretion to deny service in any particular instance. We conclude they do. The MTTA publishes a set of "Transit Policies" along with its quarterly route guides for MTTA customers. The transit policies provide that "the Coach Operator or other Tulsa Transit Staff will enforce the rules outlined here on Tulsa Transit's properties," and that "[b]y violating any of these policies [a rider] may be banned from Tulsa Transit." Further, in an affidavit submitted to the district court as part of the summary judgment record, Willard attested that the ban on Brown's future use of MTTA buses was made "pursuant to MTTA's published and written rules

-9-

against any fighting, throwing of any objects, pushing, rough or loud behavior or vulgar language and pursuant to MTTA's policy to ensure that their customers have a safe and enjoyable ride." Because the MTTA has limited its own discretion to ban riders to a set of clearly defined circumstances, Brown has a "legitimate claim of entitlement" to access to MTTA transportation so long as he complies with its rules and regulations, and, hence, a protected property interest under the Due Process Clause of the Fourteenth Amendment.[1]

Because the district court concluded Brown did not have a protected property interest in access to MTTA public transportation, it did not reach the issue whether sufficient process accompanied the deprivation. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("Only after finding the

---

[1]In support of its conclusion that Brown had no more than a unilateral expectation that he could continue as a passenger on MTTA buses, the district court relied on *Federal Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1200 (10th Cir. 1999). This reliance is misplaced. In *Federal Lands Legal Consortium*, a group of individuals who held grazing permits for federal lands alleged their procedural due process rights were violated when the United States Forest Service modified the terms and conditions of their previously held permits. 195 F.3d at 1193–94. In considering whether a protected property interest existed, this court expressly declined to "decide whether FLLC's members have property interests in the permits themselves. The Forest Service did not deprive FLLC's members of their right to the permits, but merely to the terms and conditions that had been included in past permits." *Id.* at 1198 n.7 (citations omitted); *see also Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1086–87 (10th Cir. 2006) ("[T]his circuit has yet to determine whether grazing permits themselves constitute protected property interests for due process purposes."). Here, by contrast, Brown has not alleged a property interest in the terms and conditions on which he could access MTTA transportation, but in access to MTA transportation itself.

deprivation of a protected interest do we look to see if the State's procedures comport with due process."); *Fed. Lands Legal Consortium ex. rel Robart Estate v. United States*, 195 F.3d 1190, 1195–96 (10th Cir. 1999). We leave that issue open to the district court on remand.

B.      Remaining Claims on Appeal

Brown presents seven arguments on appeal in addition to those discussed above.[2] Having carefully reviewed the record and the arguments of the parties, and applying the appropriate standards of review,[3] we conclude Brown's

---

[2]In Proposition I, Brown states: "Where a trial judge makes erroneous conclusion[s] of relevant facts in granting a summary judgment[,] reversal of the judgment is proper." Proposition II states: "When a trial judge fails to view contested fact issues [in a] light most favorable to the non-moving party in ruling on a motion for summary judgment[,] reversal of the judgment is required." Proposition IV states: "When allegations and proof of instances of disparate treatment are present in the record in a claim for denial of equal protection[,] summary judgment is inappropriate." Proposition V states: "It is reversible error when a trial judge fails to acknowledge a properly pleaded claim for retaliation and grants a summary judgment on the claim when the defendants['] stated reason for the adverse action is a pretext. Proposition VI states: "A trial court abuses its discretion when it refuses to make inquiry of a defendant[']s material false replies to a question from the judge." Proposition VII states: "A trial court abuses its discretion when it refuses to impose sanctions on an attorney for a clear violation of Rule 11." Proposition VIII states: "Dismissal of a section 1983 claim for an alleged conspiracy of an attorney with a state judge is improper where there is proof of joint participation between the attorney and the judge to improperly dismiss the action in state court."

[3]Grants of summary judgment are reviewed de novo, applying the same standard as the district court. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013). "This court reviews the denial of a Rule 12(b)(6) motion to dismiss *de novo*, applying the same standard as the district court, and accepting the well-pleaded allegations of the complaint as true and construing them in the
(continued...)

remaining contentions are so lacking in merit that we summarily affirm the

dismissal of his remaining claims and denial of his motions for sanctions.[4]

C.      *In Forma Pauperis* Status[5]

Along with his *pro se* complaint filed in federal court on July 17, 2009,

Brown moved to proceed *in forma pauperis* and attached a supporting financial

affidavit.  The district court granted the motion.  Brown was not incarcerated at

the time he filed his complaint and initial *ifp* petition.  Brown was incarcerated,

---

[3](...continued)
light most favorable to the plaintiff."  *Doe v. City of Albuquerque*, 667 F.3d 1111, 1118 (10th Cir. 2012) (quotation and alteration omitted).  This court reviews the district court's refusal to impose Rule 11 sanctions for abuse of discretion. *Griffen v. City of Okla. City*, 3 F.3d 336, 340 (10th Cir. 1993).

[4]The attorney defendants argue this court lacks jurisdiction over Brown's claims against them because Brown failed to identify the dismissal of his conspiracy cause of action in his notice of appeal and because his appeal of those claims was untimely.  *See* Fed. R. App. P. 3(c)(1)(B) ("The notice of appeal must . . . designate the judgment, order, or part thereof being appealed . . . .");  Fed. R. App. P. 4(a).  These contentions are incorrect.  The district court entered final judgment against Brown on April 19, 2011.  The final judgment referred to both the district court's order dismissing Brown's claims against the attorney defendants and its order granting summary judgment as to his remaining claims. Brown then filed a motion for reconsideration under Fed. R. Civ. P. 59, which the district court denied on June 8, 2011.  Brown's notice of appeal was filed on June 27, 2011, and referred to the final judgment entered by the district court as well as the order denying his Rule 59 motion.  The notice of appeal was therefore timely filed, Fed. R. App. P. 4(a)(1)(A), (a)(4)(A), and properly designated the judgments and orders being appealed, Fed. R. App. P. 3(c)(1)(B).

[5]We note at the outset that the PLRA's *ifp* provisions are not jurisdictional. *See Garcia v. Silbert*, 141 F.3d 1415, 1417 n.1 (10th Cir. 1998); *Brennan v. U.S. Gypsum Co.*, 330 F.2d 728, 729 (10th Cir. 1964) (holding failure to pay docketing fee does not deprive this court of jurisdiction).

however, when he filed his notice of appeal. Thus, after filing his notice of appeal, Brown filed a renewed motion to proceed *ifp* and an application to pay his appellate filing fees in monthly, twenty-dollar installments. *See* Fed. R. App. P. 24(a)(3)(B) ("A party who was permitted to proceed in forma pauperis in the district-court action . . . may proceed on appeal in forma pauperis without further authorization, unless . . . a statute provides otherwise."); 28 U.S.C. § 1915(a)(2). The district court denied the motion as moot, concluding Fed. R. App. P. 24(a)(3) permitted Brown to proceed *ifp* on appeal without further authorization. Brown has subsequently moved in this court for leave to proceed without prepayment of costs and fees. During the pendency of this appeal, Brown was released from prison.

Applications to proceed *ifp* are governed by 28 U.S.C. § 1915. The main *ifp* provision, § 1915(a)(1), provides:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner[6] possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

---

[6]Although the first sentence of 28 U.S.C. § 1915(a)(1) substitutes the word "prisoner" for "person," this court has recognized that § 1915(a)(1) "applies to all persons applying for IFP status, and not just to prisoners." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005).

The PLRA amended § 1915 to add provisions applicable to prison litigants. 28

U.S.C. § 1915(a)(2) provides:

> A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(b) further clarifies the scope of the PLRA's payment and filing

fee requirements, providing:

> (1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of —

> > (A) the average monthly deposits to the prisoner's account; or

> > (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

> (3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

This court must therefore determine whether the provisions of the PLRA apply to a litigant, like Brown, who was not incarcerated when he initiated a civil action but was incarcerated when he filed his notice of appeal. We conclude they do.

"When interpreting the language of a statute, the starting point is always the language of the statute itself. If the language is clear and unambiguous, the plain meaning of the statute controls." *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002) (citation omitted). Here, two provisions of the PLRA define the scope of its applicability. Section 1915(a)(2) applies to "[a] prisoner seeking to bring a civil action *or appeal a judgment in a civil action* or proceeding without prepayment of fees or security therefor." (emphasis added). Section 1915(b)(1) applies "if a prisoner brings a civil action *or files an appeal* in forma pauperis." (emphasis added). Brown was indisputably a "prisoner" within the meaning of the PLRA at the time he noticed his appeal. *See* 28 U.S.C. § 1915(h) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."). Because Brown sought to "appeal a judgment in a civil action," and "file an appeal in forma

-15-

pauperis" while he was a prisoner, the plain terms of 28 U.S.C. §§ 1915(a)(2) and (b)(1) dictate the district court erred in excusing him from the compliance with the PLRA.

Brown argues the phrase "appeal a judgment in a civil action" in § 1915(a)(2) refers back to the "civil action" brought by the prisoner. Thus, he argues, the PLRA merely creates two separate assessment points designed to deter frivolous prisoner litigation. This argument is not persuasive. Brown's reading of § 1915(a)(2) cannot be squared with the language of § 1915(b)(1), which does not use the phrase "a civil action" and applies to any prisoner who "file[s] an appeal *in forma pauperis*." Seeking to get around this problem, Brown argues the fee payment provision—§ 1915(b)(1)—and the trust account disclosure provision—§ 1915(a)(2) must be read consistently with each other because one cannot apply without the other. In other words, without the disclosure of a trust account, the court cannot make the required assessments to collect the filing fee. While true, this argument just as validly justifies reading § 1915(a)(2) consistently with § 1915(b)(1) as the contrary reading preferred by Brown. Because the language of § 1915(b)(1) is not susceptible to any of the possible ambiguities inherent in § 1915(a)(2), reading the two provisions in harmony compels the conclusion that the PLRA applies to any prisoner who brings an appeal and seeks *ifp* status, regardless of whether the underlying district court action was filed before the prisoner was incarcerated.

The terms of the statute also dictate the scope of Brown's payment obligation under the PLRA.[7] 28 U.S.C. § 1915(b)(1) provides that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." This obligation, however, applies to both prisoner and non-prisoner *ifp* litigants. *See Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997) ("Section 1915(b)(1) says that prisoners are liable for the full fees, but so is every other person who proceeds *in forma pauperis*; all § 1915(a) does for any litigant is excuse the *pre*-payment of fees. Unsuccessful litigants are liable for fees and costs and must pay when they are able."). Unlike non-prisoner *ifp* litigants, prisoners, while incarcerated, are required to make payments according to the scheme set forth in § 1915(b). Thus, Brown should have paid an initial partial appellate filing fee calculated according to the formula set forth in 28 U.S.C. § 1915(b)(1). While he was incarcerated, he should have also paid additional amounts calculated pursuant to § 1915(b)(2) on the basis of his monthly income from the time he filed his notice of appeal to the time of his release from incarceration.

Neither of these sums have been paid and, thus, constitute an outstanding obligation. We note, however, that Brown's failure to make the payments is not

---

[7]Brown is no longer incarcerated and, thus, the PLRA no longer applies to him. *See DeBlasio v. Gilmore*, 315 F.3d 396, 399 (4th Cir. 2003). Assuming he is still eligible, § 1915(a) applies once again.

due to any bad-faith conduct on his part. To the contrary, shortly after filing his notice of appeal, Brown moved to make payments of the appellate filing fee in monthly, twenty-dollar installments and provided the required trust account information to the district court. Brown also provided the relevant trust account information to this court in conjunction with his motion to proceed *ifp*. In light of the unusual circumstances of this matter, on remand the district court should exercise its discretion to determine the amount of the outstanding fee obligation, i.e., the amount which should have been assessed under § 1915(b) prior to Brown's release from prison, and terms pursuant to which Brown may pay it.

## III. Conclusion

For the foregoing reasons, the judgment of the district court dismissing Brown's procedural due process claim is **reversed**. The judgment of the district court is **affirmed** in all other respects, and the matter is **remanded** for further proceedings not inconsistent with this opinion. Brown's motion for leave to proceed *in forma pauperis* before this court is **granted**, but he is obligated to make payments toward the appellate filing fee as determined by the district court. Further, like any *ifp* litigant, he remains liable for the full amount of the filing fee.